UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THERESA M. GARLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-01765-SPM |
| | ) |
| NATIONSTAR MORTGAGE, LLC, | ) |
| d/b/a Mr. Cooper, *et al.* | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This case is before the Court on Plaintiff's Motion to Remand this case to state court. (Doc. 12). The motion has been fully briefed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 21). For the reasons stated below, the motion will be denied.

### I. BACKGROUND

Plaintiff Theresa Garland ("Plaintiff") filed the instant action in Missouri state court against Nationstar Mortgage, LLC ("Defendant Nationstar") and The Bank of New York Mellon Corporation ("Defendant Mellon") (collectively, "Defendants"). In her Petition, she alleges as follows. On October 1, 1997, Plaintiff purchased a piece of real property (the "Property") for approximately $67,000 and took out a mortgage loan through Countrywide Mortgage. After an unknown number of sales, and prior to February 2017, Defendant Mellon became the investor for Plaintiff's mortgage, with Defendant Nationstar as the servicer. In September 2018, after a job loss and the exhaustion of her savings, Plaintiff started to fall behind on her mortgage payments. Over the next few months, Plaintiff and Nationstar engaged in correspondence and telephone calls regarding the amount Plaintiff owed and the steps Plaintiff could take to avoid

1

foreclosure. While Plaintiff was taking the steps Nationstar asked her to take, Plaintiff was informed that the Property had been placed in foreclosure. Plaintiff continued to engage in correspondence and telephone calls with Nationstar about what information she needed to submit to prevent a foreclosure sale, and Nationstar told her that the sale would be put on hold while her application for mortgage assistance was being considered. On March 7, 2019, Plaintiff received a letter stating that the foreclosure sale had taken place on February 1, 2019. On March 22, 2019, Nationstar filed an unlawful detainer action to evict Plaintiff from the Property.

Defendants attached to the Notice of Removal evidence showing that the foreclosure sale price of the Property was $51,835.63; that appears to be undisputed. (Doc. 1-1, at p. 53). Defendants have submitted an appraisal report for Property from a state-certified residential real estate appraiser, which concludes that the estimated value of the property as of January 10, 2019 was $80,000. (Doc. 1-2). The appraisal is based, *inter alia*, on the Property's condition, market conditions, and sale prices of $78,000, $83,000, and $95,000 for comparable properties nearby.

On or around May 21, 2019, Plaintiff filed her Verified Petition for Wrongful Foreclosure in state court. Plaintiff asserts two claims against Defendants: (I) Violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020, based on the false, misleading, and deceptive statements Nationstar made to Plaintiff; and (2) Fraudulent Misrepresentation, based on Nationstar's false statement that "underwriting will put the [foreclosure] sale on hold while the [mortgage assistance] application is being considered." Plaintiff asks the Court to stop the unlawful detainer action from going forward and to stop the sale of the Property from Nationstar to Mellon, if it has not already occurred. Plaintiff also seeks damages in an unspecified amount, including punitive damages.

On June 21, 2019, Defendants removed this action to this Court based on diversity of citizenship under 28 U.S.C. § 1332. (Doc. 1) On July 3, 2019, Plaintiff filed the instant motion to remand the matter to state court, arguing that no diversity jurisdiction exists because the amount in controversy does not exceed $75,000.

## II.  LEGAL STANDARD

As the parties invoking federal jurisdiction, Defendants in this removal case bear the burden of establishing by a preponderance of the evidence that federal jurisdiction exists. *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010). All doubts regarding federal jurisdiction are to be resolved in favor of remand. *Central Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009).

A defendant may generally remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332, the district court has original jurisdiction over an action "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the action is between citizens of different states. § 1332(a). Complete diversity of citizenship is required by § 1332, and complete diversity "exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). Additionally, "A civil action otherwise removable solely on the basis of jurisdiction under section 1332(a) of this title may not be removed in any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." § 1441(b)(2). "If at any time before final judgment it appears that

the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

### III. DISCUSSION

In the instant motion, Plaintiff argues that this Court lacks jurisdiction, and the case should be remanded, because the requirements for establishing diversity jurisdiction under 28 U.S.C. § 1332(a) are not satisfied. Specifically, Plaintiff argues that the amount in controversy requirement is not met, because the amount in controversy in this case is less than $75,000. The pleadings establish, and Plaintiff does not dispute, that the requirement of complete diversity of citizenship is satisfied.[1]

In determining whether Defendants have shown, by a preponderance of the evidence, that the amount in controversy requirement is satisfied, the question "is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are . . ." *Bell v. Hershey Co.*, 557 F.3d 953, 959 (8th Cir. 2009) (quotation marks omitted; emphasis in original). Where, as here, the petition does not contain a demand for a specific monetary amount, the Court must make a factual inquiry into the amount-in-controversy issue. *Hofmann v. Wells Fargo Bank, N.A.*, No. 4:19-CV-423 CDP, 2019 WL 1992630, at *1 (May 6, 2019). *See also Hollenbeck v. Outboard Marine Corp.*, 201 F. Supp. 2d 990, 993 (E.D. Mo. 2001).

---

[1] Plaintiff alleges in the Petition that she is a citizen of Missouri. Defendants allege in the Notice of Removal that Defendant Mellon is a Delaware corporation with its principal place of business in New York; therefore, Defendant Mellon is a citizen of Delaware and New York. *See* 28 U.S.C. § 1332(c) (corporation is a citizen of the state of incorporation and the state where its principal place of business is located). Defendants allege in the Notice of Removal that Defendant Nationstar is a Delaware limited liability company ("LLC") with two LLC members, each of which has as its sole member a Delaware corporation with its principal place of business in Texas. Thus, Defendant Nationstar is a citizen of Delaware and Texas. *See* 28 U.S.C. § 1332(c); *GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004) ("[A]n LLC's citizenship is that of its members for diversity jurisdiction purposes.").

"[I]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977); *accord James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 833 (8th Cir. 2005) (citing *Hunt*, 432 U.S. at 347). The Eighth Circuit has also held that the amount in controversy is the value to the plaintiff of the right that is in issue. *See also Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1018 (8th Cir. 2010) ("We have held repeatedly that in a suit for declaratory or injunctive relief the amount in controversy is the value to the plaintiff of the right that is in issue."). "[T]he amount in controversy is measured from the perspective of the plaintiff, not of other interested parties, and by the value of the object of the litigation, here, the Property. To determine the value of the Property to the Plaintiff, the Court 'must determine what the property interest at issue is worth in the marketplace, which is a matter of objective fact.'" *Landmark Fin. Sols., LLC v. Elam*, No. 4:14-CV-01883-JAR, 2015 WL 2452683, at *3 (E.D. Mo. May 21, 2015) quoting *Crowder v. Avelo Mortg., LLC*, No. 4:14-CV-1351-RLW, 2014 WL 4915149, at *2 (E.D. Mo. Sept. 30, 2014)).

The parties appear to agree that the object of the litigation here is the Property. The question before the court, then is whether the value of the Property to Plaintiff is $75,000 or more. Plaintiff contends that the value of the Property is determined by the foreclosure sale price, $51,835.63. Defendants, on the other hand, argue that a market-based appraisal showing the value of the Property to be $80,000 close to the time of foreclosure provides the better measure of the Property's value.

The parties have not cited, and the Court has not found, any binding precedent from the Eighth Circuit or the Supreme Court addressing whether, for purposes of determining the amount

in controversy in a foreclosure action, the value of a piece of property should be determined by a foreclosure price or by an appraised value. As Plaintiff points out, one other judge in this district recently considered the question and held that the foreclosure sale price is determinative, not the appraised value. In *Hofmann v. Wells Fargo Bank, N.A.* the plaintiff filed a wrongful foreclosure action to set aside the defendants' foreclosure of her home, and the case was removed to federal court. No. 4:19-CV-423 CDP, 2019 WL 1992630, at *1 (E.D. Mo. May 6, 2019). The plaintiff moved to remand the case on the basis that the amount in controversy was less than $75,000, presenting evidence that the home had been purchased at a foreclosure sale for $41,971.81. *Id.* at *2. In opposition, the defendants averred that the home had an appraised value between $60,800 and $72,000 and argued that the appraised value, combined with emotional damages and punitive damages, would exceed $75,000. *Id.* The court agreed with the defendants that, "in wrongful foreclosure cases, the value of the property at the time of foreclosure is considered as the value of the object in controversy for purposes of determining the amount in controversy." *Id.* at *2. However, it rejected the defendants' argument that the appraised value should be used to determine the value of the property, stating, "the value is determined by the purchase price of the property when it was sold at foreclosure, not the appraised value." *Id.* The court did not articulate specific reasons for its holding, though it did cite three cases: *Morris v. Wells Fargo Home Mortg.*, No. 4:11-CV-1462-CEJ, 2011 WL 3665150, at *1 (E.D. Mo. Aug. 22, 2011); *Kisner v. Bank of Am., N.A.*, No. 10-03527-CV-S-DGK, 2011 WL 2160891, at *2 (W.D. Mo. June 1, 2011); *Garland v. Morg. Elec. Registration Sys., Inc.*, Civ. Nos. 09-71 (JNE/JJG), 09-72 (JNE/JGG), 09-342 (JNE/JGG), 09-430 (JNE/JJG), 2009 WL 1684424, at *3 (D. Minn. June 16, 2009). The court concluded that because the foreclosure sale price was $41,971.81, that was the value of the object in controversy. *Id.* The court also found that Defendants had not established

that the claims for emotional and punitive damages, when combined with the value of the property, exceeded $75,000. *Id.* at *2-*3. Thus, the court granted the motion to remand. *Id.*

Plaintiff urges this Court to follow *Hofmann*, though she does not provide any additional arguments for why the *Hofmann* approach was correct. Although *Hofmann* certainly provides valuable guidance, it is not binding on this Court.[2] Defendants urge the Court not to follow *Hofmann*, arguing that the three cases relied on in *Hofmann* did not actually address the issue presented in this case. Defendants also argue that property will often be sold at a foreclosure sale for *less* that the actual market value. Defendants argue that this is partly because usually, a creditor at a foreclosure sale will have an incentive not to bid much (if any) more than the amount of the underlying debt.[3] In contrast, Defendants argue, an appraisal is specifically designed to determine the market value of a property

The Court agrees with Defendants that the cases relied on by the court in *Hofmann* provide minimal support for the conclusion that the foreclosure sale price provides a better measure of fair market value than does an appraisal price. In those cases, the courts simply did not have occasion to decide that question.[4] At most, the cases relied on in *Hofmann* suggest that the foreclosure sale price may be one way of determining the value of a property.

---

[2] *See Camreta v. Greene*, 563 U.S. 692, 708 n. 7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting 18 J. Moore et al., Moore's Federal Practice § 134.02[1][d], pp. 134-26 (3d ed. 2011))

[3] Defendant points out that in this case, the foreclosure sale price was within a few hundred dollars of the amount owed on the loan.

[4] In *Morris*, there was no apparent dispute regarding the amount in controversy or the value of the property; the court simply, in assessing its own jurisdiction, took judicial notice of public records showing that the property at issue had been sold in a foreclosure sale for $196,000. 2011 WL 3665150, at *1. In *Kisner*, the dispute was over whether the value of the property itself determined the amount in controversy; there was no apparent dispute about how the value of the property should be determined or about whether a foreclosure sale price would provide the best

7

The Court also finds persuasive Defendants' argument that because of the nature of a foreclosure sale and the creditor's incentive to bid little more the amount of the underlying debt, the foreclosure sale price does not necessarily provide a good indication of "what the property interest at issue is worth in the marketplace." *See Landmark Fin. Sols., LLC,* 2015 WL 2452683, at *3. Additionally, the Court's research has revealed two cases from the Eastern District of Michigan that have addressed this issue, and in both cases, the courts used reasoning similar to Defendants' to conclude that the foreclosure sale price was *not* the best measure of the property's value for purposes of determining the amount in controversy. In *Williams v. JPMorgan Chase Bank, N.A.*, the plaintiff sought injunctive relief setting aside a foreclosure sale and staying all proceedings regarding the alienation of title of the foreclosed property. No. 12-CV-12476, 2012 WL 6150742, at *1 (E.D. Mich. Dec. 11, 2012). The defendant removed the case to federal court, and the plaintiff sought remand, arguing that the amount in controversy was not met because the foreclosure sale price was $73,051. *Id.* The defendant argued that appraised values or market value analyses provided a better measure of the property's value than foreclosure prices, and it presented a market appraisal of the property of approximately $110,000 and a comparative market analysis showing sale prices of similar properties for $84,000, $147,900, and

---

measure. 2011 WL 2160891, at *2. Indeed, no foreclosure sale had yet taken place in *Kisner*. *Id.* The court noted that the mortgage was $225,000, the price the plaintiff paid for the property was $225,000, and the county property assessment was $230,000, and found that therefore the amount in controversy clearly exceeded $75,000. *Id.* In *Garland*, the dispute was over whether the value of the property should be determined by the rental value of the property or the fair market value of the property. 2009 WL 1684424, at *1. The plaintiffs' position was that the property should be valued based on its rental value, whereas the defendants' position was that it should be determined by the foreclosure sale price or the property's fair market value. 2009 WL 1684424, at *2. The court agreed with the defendants' position that the value of the property should control. *Id.* It then noted that there was "no need to decide" whether the value should be determined by the foreclosure sale price or amount of outstanding debt, because either amount exceeded $75,000. *Id.* at *3. The court also noted that "the foreclosure sale prices, in particular, provide a reliable indication of fair market value." *Id.*

8

$167,000. *Id.* The court decided to use the market appraisal and market analysis reports provided by the defendant, and not the foreclosure sale price, because "market analysis is a more reliable indicator of actual fair market value that is the price for which the property was sold at the sheriff's sale." *Williams*, 2012 WL 6150742 at *4. The court explained:

> At a sheriff's sale, the price may be influenced by the amount due on the loan, . . . and there may also be only one bidder at the sheriff's sale . . . Both of these factors may cause a sheriff's sale price to deviate from the *actual* market value of the property. A comparative market analysis that assesses the actual market demand for comparable, neighboring residential properties is more likely to accurately reflect the fair market value of the property in question.

*Id.* at *3 (emphasis added). The Court then found that because all of the market appraisals and analyses showed a value exceeding $75,000, the defendant had met its burden of demonstrating that the amount in controversy requirement was satisfied.

In *Golden v. Wells Fargo Bank, NA*, , the defendant argued that the fair market value of a foreclosed property, for purposes of determining the amount in controversy, was the sale price of the property when it was sold at a sheriff's sale ($118,262.87). No. 11-15558, 2012 WL 1130547, at *2. (E.D. Mich. Apr. 4, 2012). The plaintiff, on the other hand, asked the court to rely on a market analysis showing that the average sale price of comparable property was $51,833.33. *Id.* at *2. The Court noted, "Fair-market value is determined by value on the open market, not by value at a foreclosure sale, as 'the price which property commands at a forced sale may be hardly even a rough measure of its value.'" *Id.* (quoting *Gelfert v. Nat'l City Bank of New York*, 313 U.S. 221, 233 (1941)). The Court concluded that it would "decline[] to use a sheriff's sale, in which the property was purchased by the very entity that owned the mortgage, as a proxy for fair-market value." *Id.* It concluded that because the market analysis showed that the average sale price of comparable properties was under $75,000, the amount in controversy requirement was not satisfied. *Id.*

9

The Court finds the reasoning in *Williams* and *Golden* persuasive. The Court agrees with Defendant that the market-based appraisal provided by Defendants provides a more accurate estimate of the value of the property than does a foreclosure sale price. Additionally, viewing the value of the house from Plaintiff's perspective, as the Court must, the price Plaintiff would pay for this house (or a comparable house) on the open market provides a better estimate of the value of the house *to Plaintiff* than does the foreclosure sale price, which has little relationship to the value of the house to an individual property owner. Thus, for purposes of determining the amount in controversy, the Court finds that the best estimate in the record of the value of the Property is $80,000, and the amount in controversy requirement is satisfied. Because Defendants have met their burden of showing that the amount in controversy exceeds $75,000 based on the value of the Property, the Court need not address the issues of whether punitive damages and attorney's fees push the amount in controversy over the required amount.

### IV. CONCLUSION

For all of the above reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand. (Doc. 12) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff shall file a response to Defendants' Motion to Dismiss no later than **Friday, January 10, 2020.**

**IT IS FINALLY ORDERED** that if Defendant wishes to file a reply to Plaintiff's response to the motion to dismiss, the reply shall be filed no later than fourteen days after Plaintiff files the response.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 17th day of December, 2019.