UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THERESA M. GARLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19-CV-01765-SPM |
| | ) | |
| NATIONSTAR MORTGAGE LLC, | ) | |
| and THE BANK OF NEW YORK | ) | |
| MELLON CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This case is before the Court on Defendants' Motion to Dismiss Pursuant to Fed. R. Civ.

P. 12(b)(6). (Doc. 15). The motion has been fully briefed and is ready for disposition. The parties

have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to

28 U.S.C. § 636(c). (Doc. 21). For the following reasons, Defendants' motion to dismiss will be

granted.

**I.    FACTUAL AND PROCEDURAL BACKGROUND[1]**

Plaintiff Teresa M. Garland is a citizen and resident of Missouri. Pet'n, ¶ 1. Defendant

Nationstar Mortgage, d/b/a Mr. Cooper ("Nationstar") is a Delaware limited liability company

engaged in the business of extending credit to and/or servicing mortgage loans for consumers. *Id.*

¶ 2. Defendant The Bank of New York Mellon Corporation ("Mellon") is a Delaware corporation

engaged in the business of funding consumer mortgage loans. *Id.* ¶ 3. At all times relevant to this

case, Nationstar was the servicer of Plaintiff's mortgage loan for the real property located at 8676

Moran Place in the County of St. Louis, Missouri ("the Property"). *Id.* ¶ 4. Mellon was the Investor

---

[1] These facts are taken from Plaintiff's Petition. (Doc. 3).

for the Property. *Id.* ¶ 5. At all times relevant to this case, Nationstar was acting as the agent of Mellon, and all pertinent acts and omissions of Nationstar were done within the course and scope of its authority on behalf of Mellon. *Id.* ¶ 6.

On October 1, 1997, Plaintiff purchased the Property for approximately $67,000.00, and took out a mortgage loan, backed by a Deed of Trust, through Countrywide Mortgage. *Id.* ¶ 8. Countrywide Mortgage subsequently sold the mortgage loan to a different company, followed by an unknown number of sales thereafter. *Id.* ¶ 9. Prior to February 2017, Mellon became the investor for Plaintiff's mortgage loan, and Nationstar serviced the loan. *Id.* ¶ 10. In or around August 2016, Plaintiff lost her job with AT&T, where she had been employed since 1996. *Id.* ¶ 11. From August 2016 to September 2018, Plaintiff used her savings to make her mortgage payments each month. *Id.* ¶ 12. However, Plaintiff exhausted her savings as of September 2018 and started to fall behind on her payments. *Id.* ¶ 12. On or about October 19, 2018, Plaintiff received a letter from Nationstar advising that her loan was past due and that she "may have options to prevent foreclosure." *Id.* ¶ 13; Pl.'s Ex. 1. Plaintiff was encouraged to contact Nationstar, which indicated it wanted to work with Plaintiff to help find alternatives to meet her needs. *Id.* ¶ 13. Plaintiff contacted Nationstar to inquire about her options, and Nationstar assigned a loan specialist, Travon Coleman, to assist her. *Id.* ¶ 14.

On or about November 1, 2018, Plaintiff received a letter from Coleman stating that he had been appointed to help Plaintiff find a solution so she could keep her house. *Id.* ¶ 15; Pl.'s Ex. 2. The following day, Plaintiff received a letter from Nationstar stating she was in default on her mortgage loan and needed to pay $2,961.52 to bring her account current. *Id.* ¶ 16; Pl.'s Ex. 3. On or about November 18, 2018, Plaintiff received a letter from Nationstar and a packet of documents that Plaintiff needed to fill out and return by December 18, 2019. *Id.* ¶ 17; Pl.'s Ex. 4. Plaintiff

filled out the information in a timely manner and submitted the packet to Nationstar via e-mail on December 17, 2018. *Id.* ¶ 18; Pl.'s Ex. 5. On December 19, 2018, two days after Plaintiff submitted her request for mortgage assistance, Nationstar's counsel, Shapiro and Kreisman, LLC ("S&K"), sent Plaintiff a letter telling her that the Property had been placed in foreclosure. *Id.* ¶ 19; Pl.'s Ex. 6. Plaintiff called and spoke to Travon Coleman after receiving Nationstar's December 19, 2018 letter. *Id.* ¶ 20. Coleman said that "some information was missing" from Plaintiff's modification application, and that Plaintiff still needed to provide a breakdown of her expenses. *Id.* ¶ 20. On or about December 20, 2018, Plaintiff received a letter from S&K advising her that she owed $51,697.69 on her mortgage loan, but also that she could still be entitled to seek assistance from "the lender." *Id.* ¶ 21; Pl.'s Ex. 7. On December 23, 2018, Plaintiff e-mailed to Nationstar the "missing information" that Coleman had requested on December 19, 2018. *Id.* ¶ 22; Pl.'s Ex. 8.

On or about January 11, 2019, Plaintiff received a Notice of Trustee's Sale from the Successor Trustee, S&W Foreclosure Corporation. *Id.* ¶ 23; Pl.'s Ex. 9. Plaintiff called Coleman after receiving the Notice of Trustee's Sale to find out why no decision had been made on her application for mortgage assistance. *Id.* ¶ 24. Coleman responded that Nationstar still had not received a breakdown of Plaintiff's expenses as earlier requested. *Id.* ¶ 24. Plaintiff advised Coleman that the requested information had previously been sent via e-mail on December 23, 2018 but said she could resend it. *Id.* ¶ 24. Plaintiff asked Coleman if there was any other information Nationstar needed from her, and Coleman requested a profit-and-loss statement. *Id.* ¶ 25. Plaintiff then e-mailed a profit-and-loss statement to Coleman on January 23, 2019. *Id.* ¶ 25; Pl.'s Ex. 10. Plaintiff asked Coleman if Nationstar needed anything else, and Coleman responded, "that should be the final piece." *Id.* ¶ 26. Plaintiff asked Coleman about the status of the foreclosure sale, and

Coleman responded: "underwriting will put the sale on hold while the application is being considered." *Id.* ¶ 26.

On or about March 7, 2019, Plaintiff received a letter from S&K stating the foreclosure sale had taken place on February 1, 2019 and that Plaintiff was now required to vacate the Property. *Id.* ¶ 27; Pl.'s Ex. 11. Plaintiff called Nationstar to complain about the foreclosure and spoke to "Tina." *Id.* ¶ 28. Tina told Plaintiff her application for mortgage assistance was incomplete but was other unable to specify what information was still missing. *Id.* ¶ 28. On March 22, 2019, Nationstar filed an unlawful detainer action against Plaintiff in order to evict Plaintiff from the Property. *Id.* ¶ 29; Pl.'s Ex. 12.

Plaintiff asserts two counts against Defendants. In Count I, Plaintiff brings a claim under the Missouri Merchandising Practices Act against both defendants. Plaintiff alleges that Nationstar used deception, fraud, false pretense, false promise, misrepresentation or unfair practices, or concealed, suppressed, or omitted a material fact in connection with the extension of credit in one or more of the following ways: (a) Nationstar falsely told Plaintiff that "underwriting will put the foreclosure sale on hold while the mortgage assistance application is being considered," yet Nationstar foreclosed regardless, thereby depriving Plaintiff of the opportunity of securing alternate financing prior to the foreclosure sale; (b) Nationstar's letters and correspondence offering to help Plaintiff keep her house and find other options to foreclose were false, deceptive and misleading, because Nationstar had no intention of helping Plaintiff keep her house, and its only intention was to foreclose; and (c) Nationstar falsely told Plaintiff her application for mortgage assistance was incomplete, as this was merely a ruse to delay making a decision on Plaintiff's application so the foreclosure proceedings occur in advance of making a decision and Nationstar could unfairly blame Plaintiff for the delay. *Id.* ¶ 38. Plaintiff further alleges that

Nationstar's actions constitute a pattern and practice of deceptive conduct, and that as a result of Nationstar's conduct, Plaintiff suffered an ascertainable loss of money or property. *Id.* ¶ 40, 41.

In Count II, Plaintiff brings a fraudulent misrepresentation claim against both defendants. Plaintiff alleges that Nationstar told Plaintiff that "underwriting will put the [foreclosure] sale on hold while the [mortgage assistance] application is being considered"; that this representation was made with the intent that Plaintiff would rely on it; that the representation was false; and that Nationstar either knew the representation was false at the time the representation was made or made the representation without knowing whether it was true or false. *Id.* ¶¶ 44-48. Plaintiff alleges that the representation was material, in that Plaintiff would have considered other resources if the representation had not been made; that she relied on the representation, and that such reliance was reasonable under the circumstances. *Id.* ¶¶ 48-49. Plaintiff further alleges that that as a direct and proximate result of Nationstar's fraudulent misrepresentation, Plaintiff sustained damage. *Id.* ¶ 51.

## II.   LEGAL STANDARDS

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept as true all of the factual allegations in the complaint, though it need not accept the legal conclusions. *Id*. Additionally, "[w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997)).

5

III.    DISCUSSION

### A.  Count I: Violation of the MMPA

In Count I, Plaintiff alleges that Nationstar violated the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010, *et seq.*, through Nationstar's misrepresentations and misleading conduct related to her mortgage. Plaintiff also alleges that because Nationstar was the duly appointed agent of Mellon, all of the acts and conduct of Nationstar are attributable to Mellon.

#### 1.  MMPA claim against Nationstar

The Court first considers Plaintiff's MMPA claim against Nationstar. Section 407.025 of the MMPA provides that "[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020  may bring a private civil action . . ." Mo. Rev. Stat § 407.025.1. Section 407.020 of the MMPA provides, in relevant part:

1. The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice. . . . Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

2. Nothing contained in this section shall apply to: . . .

    (2)    Any institution, company, or entity that is subject to chartering, licensing, or regulation by the director of the department of commerce and insurance under chapter 354 or chapters 374 to 385, the director of the division of credit unions under chapter 370, or director of the division of finance under chapters 361 to 369, or chapter 371, unless such directors specifically authorize the attorney general to implement the powers of this chapter or such powers are provided to either the attorney general or a private citizen by statute.

6

Mo. Rev. Stat. § 407.020.

In the instant motion to dismiss, Defendants assert that Nationstar is an entity subject to chartering, licensing, or regulation by the director of the division of finance, as described in Section 407.020.2(2), and thus that by the plain language of the MMPA, Section 407.020.1 does not apply to conduct by Nationstar. After review of the parties' submissions and the relevant statutory language and case law, the Court agrees with Defendants.

To support their assertion that Nationstar is an entity described in Section 407.020(2), Defendants attach to their motion an exhibit containing a screenshot from a search of the Missouri Division of Finance's website showing Nationstar Mortgage, LLC's License/Charter number, original license date (February 9, 2010), and licensee details. Def.'s Ex. A, Doc. 16-1. The Court will take judicial notice of this exhibit. *See Stahl v. U.S. Dep't of Agric.,* 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a motion to dismiss."). *See also Harris v. Nationstar Mortg., LLC*, No. 4:17CV1312 RLW, 2019 WL 4394879, at *3 (E.D. Mo. Sept. 13, 2019) (taking judicial notice of screenshot of Nationstar's license information found on the website for the Missouri Division of Finance).

As Defendant notes, several state and federal courts have held that section 407.020.1 does not apply to entities subject to licensing by the director of the division of finance, including Nationstar. *See Reitz v. Nationstar Mortg*., *LLC*, 954 F. Supp. 2d 870, 892-93 (E.D. Mo. 2013) (holding Nationstar was exempt from the provisions of the MMPA pursuant to section § 407.020(2) because it was a licensee of the Missouri Division of Finance and dismissing an MMPA claim against Nationstar); *Caranchini v. Nationstar Mortg. LLC*, No. 4:17-CV-00775-DGK, 2019 WL 418119, at *3 (W.D. Mo. Feb. 1, 2019) (holding the plaintiff's MMPA claim failed because there was "no dispute that Nationstar is an entity subject to the chartering, licensing,

or regulation by the Director of the Missouri Division of Finance" under section 407.020.2(2), *aff'd*, 785 F. App'x 353 (8th Cir. 2019); *Memhardt v. Nationstar Mortg., LLC*, No. 4:17-CV-01411-AGF, 2018 WL 5923445, at \*7 (E.D. Mo. Nov. 13, 2018) (holding Nationstar exempt from MMPA claim pursuant to section 407.020.2(2) because it was a licensee of the Missouri Division of Finance). *See also Rashaw v. United Consumers Credit Union*, 685 F.3d 739, 745 (8th Cir. 2012) (affirming district court's dismissal of MMPA claims against credit union because such claims were barred by the express exemption of § 407.020.2(2)); *Meyers v. Kendrick*, 529 S.W.3d 54, 62 (Mo. Ct. App. 2017) (holding a defendant bank was entitled to judgment on an MMPA claim against it because it was an institution subject to chartering, licensing, or regulation by the director of the division of finance as described in section 407.020.2(2)).

In her opposition, Plaintiff does not challenge Defendants' assertion that Nationwide is a licensee of the Missouri Division of Finance or that Nationwide falls under the exemption described in section 407.020.2(2). Plaintiff also acknowledges that current state and federal court decisions do not support her claim under the MMPA. However, Plaintiff notes that the Missouri Supreme Court has not addressed the question of whether a plaintiff may bring an MMPA claim against an entity described in section 407.020.2. Plaintiff also notes that in 1986, the Missouri legislature changed the introductory paragraph of section 407.020.2(2) from "nothing *herein* contained" to "nothing contained in this *section*." Plaintiff contends that by specifying the word "section," the plain language suggests the legislature did not intend to extend the exemptions to section 407.025, which is the section that creates the private right of action in favor of Plaintiff.

Plaintiff's argument is without merit. Section 407.025, by its plain terms, only permits a person to bring a cause of action based "a method, act, or practice *declared unlawful by section 407.020*." Mo. Rev. Stat. 407.025.1 (emphasis added). According to section 407.020's own plain

language, section 407.020.1's declaration that certain conduct is unlawful does not apply to conduct by entities that are exempt under section 407.020.2(2). Plaintiff does not explain how the Court could possibly read section 407.020 to declare unlawful any conduct by an exempt entity.

Courts have repeatedly rejected similar attempts by plaintiffs to read the private right of action in section 407.025.1 as negating the exemptions in section 407.020.2(2). In *Meyers*, for example, the defendant was a bank described in the section 407.020.2(2) exemption. 529 S.W.3d at 61. However, the plaintiffs argued that the last phrase of section 407.020.2(2)—"unless . . . such powers are provided to . . . a private citizen by statute"—negated the preceding exemption language, because private citizens are given the right to implement the powers of chapter 407 by section 407.025. *Id.* The Missouri Court of Appeals rejected that argument, stating:

> When read together, the legislature's intent as to sections 407.020 and 407.025 is clear and unambiguous. [Defendant's] analysis is correct. Section 407.025 only grants a private right of action for "the use or employment by another person of a method, act or practice declared unlawful by section 407.020." Section 407.025.1 (emphasis added). By the express terms of section 407.020, however, nothing in that section applies to an institution, such as Bank, that is chartered, licensed or regulated by the director of the division of finance under chapter 362. Section 407.020.2(2).
> The [plaintiffs'] contrary reading of these two sections ignores and contradicts the clear and plain language used in both sections 407.020 and 407.025. First, it requires acceptance of the absurd conclusion that the legislature intended for the exemption from the application of section 407.020 provided in section 407.020.2(2) to be completely subsumed and eliminated by the last exception to that exemption through the application of section 407.025.1. Second, it completely ignores the cross reference language to section 407.020 in section 407.025.1. Such a reading, therefore, renders both the initial exemption language in section 407.020.2(2) and the cross reference language in section 407.025.1 superfluous and meaningless. The [plaintiffs] cite us to no relevant legal authority that allows us to engage in such a strained reading of these statutes to find lack of clarity or an ambiguity in the clear and unambiguous language actually used by the legislature in these statutes.

*Meyers*, 529 S.W.3d at 62. *See also Rashaw*, 685 F.3d at 739 (rejecting the plaintiff's argument that it was permitted to bring an action under Section 407.025 against an entity exempt under

Section 407.020.2; stating, "[t]he contention that one provision of the MMPA completely negates another violates well-accepted principles of statutory construction").

The Court finds the reasoning of the above cases persuasive and consistent with the plain language of the statute. Because Nationstar is a licensee of the Missouri Division of Finance, it is exempt from section 407.020.1 of the MMPA pursuant to section 407.020.2(2), and Plaintiff's MMPA claim against Nationstar will be dismissed. Because it is clear that there is no pleading deficiency that could overcome this failing, the dismissal will be with prejudice. The Court need not address Plaintiff's other arguments regarding Plaintiff's MMPA claims.

### 2. *Plaintiff's MMPA Claim Against Mellon*

Defendants argue that because Plaintiff's only theory of liability against Mellon is based on *respondeat superior*, and because Mellon's agent (Nationstar) is not liable, Mellon cannot be liable. Plaintiff provides no response to Defendants' argument, and the Court finds it persuasive. Under Missouri law, "an employer is liable under the theory of *respondeat superior* for damages attributable to the misconduct of an employee or agent acting within the source and scope of the employment or agency." *McHaffie v. Bunch,* 891 S.W.2d 822, 825 (Mo. 1995). However, "an [principal] will not be held liable under the doctrine of *respondeat superior* when its [agent] is held not liable to the plaintiff." *Ancell v. U.S. Bank Tr., N.A.*, No. 2:13-CV-04251-NKL, 2014 WL 2048200, at \*12 (W.D. Mo. May 19, 2014) (quoting *Thornburg v. Fed. Express Corp.,* 62 S.W.3d 421, 429 (Mo. Ct. App. 2001)). Because the Court is dismissing the MMPA claim against Nationstar, the Court will also dismiss the MMPA claim against Mellon.

### B.  Count II: Fraudulent Misrepresentation

In Count II, Plaintiff alleges a claim of fraudulent misrepresentation under Missouri law against Nationstar. Specifically, Plaintiff alleges the following:

44.  Nationstar told Plaintiff that "underwriting will put the [foreclosure] sale on hold while the [mortgage assistance application] is being considered."

45.  The representation was made with the intent that Plaintiff rely on it.

46.  The representation was false.

47.  Nationstar either knew the representation was false at the time the representation was made, or Nationstar made the representation without knowing whether it was true or false.

48.  The representation was material, in that Plaintiff would have considered other resources if the representation had not been made.

49.  Plaintiff relied on the representation, and such reliance was reasonable under the circumstances.

50.  Nationstar's false representation was willful, wanton and malicious, and was made with evil motive or reckless indifference to the rights of Plaintiff.

51.  As a direct and proximate result of Nationstar's fraudulent misrepresentation, Plaintiff sustained damage.

Pet'n ¶¶ 44-51. Plaintiff also re-alleges all of the prior allegations in her Complaint and alleges that because Nationstar was the duly appointed agent of Mellon, all of the acts and conduct of Nationstar are attributable to Mellon. *Id.* ¶¶ 42-43.

### 1.  *Plaintiff's Fraudulent Misrepresentation Claim Against Nationstar*

Under Missouri law, the elements of a fraudulent misrepresentation claim are "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. 2010). *Accord Jennings v. SSM Health Care St. Louis,* 355

S.W.3d 526, 537 (Mo. Ct. App. 2011). "A plaintiff's failure to establish any one of the essential elements of fraud is fatal to recovery." *Renaissance Leasing.,* 322 S.W.3d at 132.

As both parties recognize, Plaintiff's fraudulent misrepresentation claim must satisfy the heightened pleading rules of Federal Rule of Civil Procedure 9(b). *See, e.g., Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 439 (8th Cir. 2013). Under Rule 9(b), "In alleging fraud . . ., a party must state with particularity the circumstances constituting [the] fraud . . . ." Fed. R. Civ. P. 9(b). "This particularity requirement demands a higher degree of notice than that required for other claims." *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003). To satisfy the particularity requirement of Rule 9(b), the plaintiff must plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Frietas*, 703 F.3d at 439 (quoting *Abels v. Farmers Commodities Corp*., 259 F.3d 910, 920 (8th Cir. 2001)). *See also United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) ("To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."). "In other words, Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Frietas.* 703 F.3d at 439 (quoting *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011)). Defendants first argue that Plaintiff's allegations do not satisfy Rule 9(b), because Plaintiff has failed to plead "when" the alleged representation—that Nationstar would put the foreclosure sale on hold while the mortgage application was being considered—was made. Plaintiff makes no response to this argument, other than to point to the paragraph numbers of her Petition containing her factual allegations related to the

misrepresentation. Although it is a close question, the Court agrees with Defendant that Plaintiff has failed to plead the "when" of the misrepresentation with the heightened particularity required by Rule 9(b). The most logical reading of the Petition is that the alleged representation was made sometime between January 11, 2019 (when Plaintiff received a Notice of Trustee's Sale), and February 1, 2019 (when the foreclosure sale occurred). *See* Pet'n, ¶¶ 23-27. However, Plaintiff does not actually specifically allege that the representation occurred during that time frame, nor does she identify the time of the representation more precisely. Thus, the Court finds that she has not met the heightened pleading requirements of Rule 9(b). *See, e.g., Hill v. Bank of Am., N.A.*, No. 4:16CV00444-ERW, 2016 WL 6441599, at *4 (E.D. Mo. Nov. 1, 2016) ("Even if the Court construes this misrepresentation as happening "in December and January 2010," pleading a single instance of misrepresentation occurred during a two month time period does not satisfy the particularity requirement of FRCP 9(b)'s 'when' element.").

Moreover, even assuming, *arguendo*, that Plaintiff had adequately pleaded the timing of the misrepresentation, the Court finds that Plaintiff has failed to state a claim because she has not alleged facts sufficient to plausibly suggest that she suffered any injury proximately caused by the alleged misrepresentation. "Missouri courts have articulated the causation prong of a fraudulent misrepresentation claim, stating that '[f]or false representations to be actionable, there must exist a causal connection between the misrepresentation and the harm allegedly sustained.'" *First Bank of Marietta v. Hogge*, 161 F.3d 506, 511 (8th Cir. 1998) (quoting *Stoup v. Robinson*, 933 S.W.2d 935, 938 (Mo. App. 1996)). In addition, "[i]t must appear in an appreciable sense that the damage flowed from the fraud as the proximate and not the remote cause, and the damage must be such as is the natural and probable consequence of the fraud." *Id.* (citing *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443-44 (Mo. 1988)). *See also Mackey & Assoc. v. Russell & Axon Int'l Eng'rs–*

13

*Architects, Ltd.*, 819 S.W.2d 49, 50 (Mo. Ct. App. 1991) ("It is not enough that damage follow upon misconduct, but the tort must be the legal cause of the damage. Tortious conduct is a legal cause of damage if it is a substantial factor in the production of the harm.").

In the Petition, Plaintiff alleges that "as a direct and proximate result of Nationstar's fraudulent misrepresentation, [she] sustained damages." *Id.* ¶ 51. However, Plaintiff does not make sufficient factual allegations from which the Court can draw a reasonable inference that Coleman's representation was a substantial factor in producing the harm suffered by Plaintiff. Although Plaintiff alleges that if the representation had not been made, she "would have considered other resources," Pet'n ¶ 48, she does not allege what other resources she would have considered absent Coleman's misrepresentation, nor does she allege that such resources were available to her or would have been sufficient to allow her to obtain a successful loan modification, to satisfy the terms of the loan, to avoid foreclosure, or to otherwise avoid any injury she suffered. She also alleges (in the section of her Petition describing her MMPA claim) that she was deprived "of the opportunity of securing alternate financing prior to the foreclosure sale." Pet'n ¶ 38(a). However, she does not allege that any such alternative financing was available to her at any time or that she could have considered and secured it at or after the time the misrepresentation at issue was made— an event that it appears may have occurred only days before the foreclosure sale occurred. Because Plaintiff does not allege that Coleman's misrepresentation caused her application to be rejected, caused the foreclosure sale to occur, or caused her any other injury, Plaintiff fails to state a claim for fraudulent misrepresentation, and her claim must be dismissed.

The Court will briefly address Defendants' other arguments, both of which the Court finds unpersuasive. First, Defendants contend that Plaintiff has failed to plead reasonable reliance on Coleman's statement that the foreclosure sale would be put on hold while the mortgage assistance

application was being considered, because Plaintiff also received letters informing her that the Property was "in foreclosure," and it was not reasonable for her to rely on oral representations contrary to the written letters. As Defendants point out, courts have held that a plaintiff who is receiving conflicting information regarding may not "pick and choose" which of the conflicting information to rely on. *See Freitas v. Wells Fargo Home Mortg.*, Inc., No. 11-3146-CV-SW-RED, 2011 WL 5524913, at *3 (W.D. Mo. Nov. 14, 2011) (finding no reasonable reliance where the plaintiffs alleged that some of the defendant's representatives had told them they would qualify for a loan modification and others had told them they did not qualify and the plaintiffs alleged that they had "been unable to receive a consistent and candid answer from Defendant's representatives regarding a loan modification"; stating, "[i]n light of these conflicting representations, Plaintiffs are not able to demonstrate that they reasonably relied on any representation which is one of the elements that they must prove" and noting that "[i]t is not a matter of picking and choosing what you want to hear . . ."), *aff'd*, 703 F.3d 436 (8th Cir. 2013). Here, however, the most plausible reading of Plaintiff's allegations is that she received the written documents informing her that the Property was in foreclosure prior to hearing the alleged oral representation that the foreclosure sale would be put on hold. Under these circumstances, it appears that she reasonably viewed the oral representation as adding to or modifying, rather than conflicting with, the information about the foreclosure sale that she had received in the letters. At least one court has declined to dismiss a fraudulent misrepresentation claim under similar circumstances. *See Kisner v. Bank of Am., N.A.*, No. 11-04264-CV-S-DGK, 2012 WL 601239, at *3-4 (W.D. Mo. Feb. 23, 2012) (rejecting the defendant's argument that a plaintiff failed to plead reasonable reliance where the plaintiff alleged that he received a notice that his loan modification application had been but also alleged that he was told during a follow-up conversation to ignore the notice, that his case was still in appeal, and

that a work-out counsel would be in touch, and that he was falsely led to believe his mortgage had been modified). The Court is unpersuaded by Defendants' argument and will not base its dismissal on the failure to plead this element.

Defendants also argue that Plaintiff has failed to plausibly allege the falsity of the alleged representation that Nationstar would put the foreclosure sale on hold while the application was being considered. The Court disagrees. Defendants are correct that the mere fact that the foreclosure sale eventually occurred does not show that the representation was false at the time it was made, as is required for a fraudulent misrepresentation claim. *See, e.g.*, *Cole v. Homier Distrib. Co.*, 599 F.3d 856, 862 (8th Cir. 2010) (applying Missouri law and stating that absent allegations of intent inconsistent with a representation, "there is no misrepresentation of fact or state of mind but only a breach of promise or failure to perform") (quotation marks omitted). However, the fact that the foreclosure sale eventually took place is not the only fact Plaintiff alleges relevant to the falsity of the statement. Plaintiff also specifically alleges that "the representation was false," Pet'n ¶ 46, that Nationstar "either knew the representation was false at the time the representation was made, or Nationstar made the representation without knowing whether it was true or false," *id.* ¶ 51, and that "Nationstar had no intention of helping Plaintiff keep her house, and its only intention was to foreclose," *id.* ¶ 38(c). If proven, these allegations are sufficient to show that the representation was false at the time it was made.

Because Plaintiff has not pleaded her fraudulent misrepresentation claim with the particularity required by Rule 9(b) and because Plaintiff has not adequately pleaded proximate causation, the Court finds that Plaintiff has failed to state a claim for fraudulent misrepresentation against Nationstar. Because it is possible that Plaintiff could state a claim by pleading additional facts, this claim will be dismissed without prejudice.

### 2.   *Plaintiff's Fraudulent Misrepresentation Claim Against Mellon*

As with Plaintiff's MMPA claim, Defendants argue that because Plaintiff's only theory of liability against Mellon is based on *respondeat superior*, and because Mellon's agent (Nationstar) is not liable, Mellon cannot be liable. For the reasons discussed above, the Court agrees. Because the Court is dismissing the fraudulent misrepresentation claim against Nationstar, the Court will also dismiss the MMPA claim against Mellon without prejudice.

### C.  **Plaintiff's Request for Leave to Amend**

In her opposition brief, Plaintiff includes the following sentence: "To the exten[t] the Court prefers that Plaintiff's damages be plead with particularity as well, Plaintiff respectfully seeks leave to amend her complaint." Pl.'s Br., at The Court will construe this as a motion for leave to file an amended complaint. This motion will be denied because Plaintiff has not submitted a proposed amended complaint, nor has she articulated the specific facts that she would allege if she were granted leave to file an amended complaint or explained how those allegations would address the deficiencies identified in the Court's order. "The Eighth Circuit has repeatedly held that district courts do not abuse their discretion in denying leave to amend where the plaintiff did not file a motion for leave to amend and submit a proposed amended complaint, and merely asked for leave to amend in its response to a motion to dismiss." *Tracy v. SSM Cardinal Glennon Children's Hosp.*, No. 4:15-CV-1513 CAS, 2016 WL 3683000, at *16 (E.D. Mo. July 12, 2016) (citing *Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 678 n.4 (8th Cir. 2013); *Minneapolis Firefighters' Relief Ass'n v. MEMC Electronic Materials, Inc.*, 641 F.3d 1023, 1030 (8th Cir. 2011); *In re 2007 Novastar Financial, Inc., Secs. Litig.*, 579 F.3d 878, 884–85 (8th Cir. 2009); *Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir. 1985)). *See also Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1037 (8th Cir. 2019) (district court did not abuse its discretion in denying plaintiff's request for

leave to amend his complaint where the request was made in the opposition to a motion to dismiss and the plaintiff "did not submit a proposed amendment to the trial court, nor [include] anything in [his] brief to indicate what an amended complaint would have contained").

## IV.   CONCLUSION

For all of the above reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 15) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's request for leave to amend is **DENIED**.

**IT IS FURTHER ORDERED** that Count I (Violation of the Missouri Merchandising Practices Act) is **DISMISSED**, with prejudice.

**IT IS FURTHER ORDERED** that Count II (Fraudulent Misrepresentation) is **DISMISSED,** without prejudice.

A separate Order of Dismissal will be entered on this same date.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of April, 2020.

18